In the Matter of ARNOT OGDEN MEMORIAL HOSPITAL, Petitioner, v STATE DIVISION OF HUMAN RIGHTS, Respondent.

Third Department, May 10, 1979

APPEARANCES OF COUNSEL

*Sayles, Evans, Brayton, Palmer & Tifft (James F. Young* of counsel), for petitioner.

*Ann Thacher Anderson (Harry Starr* of counsel), for respondent.

## OPINION OF THE COURT

MAIN, J.

In August of 1974 the complainant, Lessie Walls, a licensed practical nurse, applied for a position at the Arnot Ogden Memorial Hospital at Elmira, New York. After interview she was accepted for employment subject to passing a physical examination and was to commence work on September 23, 1974. The physical examination was conducted by a Dr. Miller on September 17, 1974 and the results were entirely satisfactory, except that her blood pressure was found to be 150/120. The doctor appraised complainant of this fact and was advised that her own doctor had told her that her pressure was slightly high and bore watching but that no medication was prescribed. Dr. Miller advised that she consult her personal physician and that when her pressure was under control she could return for another physical examination. Ms. Walls consulted her physician on September 19, 1974 and was put on medication. On September 26, 1974 and October 11, 1974 Ms. Walls' pressure was found to be 140/90 and 125/100. Dr. Miller was so informed, but on October 28, 1974 he advised the complainant through the hospital that the readings were too high while under treatment and not acceptable for employment. Finally, Dr. Miller checked the pressure on December 21, 1974 and, finding it satisfactory, qualified Ms. Walls, who began working for the petitioner on January 6, 1975.

In the interim, on October 4, 1974 Ms. Walls had filed a complaint with the respondent Division of Human Rights, charging the hospital and a number of its employees with an unlawful discriminatory practice in that she was denied employment because of her disability. Following a finding of probable cause and a hearing, the division concluded that Ms. Walls' medical rejection from employment on October 28, 1974 at a time when she was undergoing successful treatment was discriminatory and petitioner was ordered to pay Ms. Walls an amount equal to the salary she would have earned from October 28, 1974 until January 6, 1975 less any moneys she

may have earned during that time interval. When the Human Rights Appeal Board affirmed this determination, petitioner commenced this proceeding.

The petitioner contends, *inter alia,* that the board's decision is unsupported by substantial evidence, that hypertension is a condition which interferes with one's ability to perform the duties of the position sought by complainant and that respondent lost jurisdiction because of prolonged administrative delay.

By unambiguous and unmistakable language, it has been made certain that it is an unlawful discriminatory practice for an employer, because of a disability of any individual, to refuse to employ or to discharge such individual or to discriminate against him in compensation or in the terms, conditions or privileges of employment *(Matter of State Div. of Human Rights v Averill Park Cent. School Dist.,* 59 AD2d 449, affd 46 NY2d 950). Subdivision 21 of section 292 of the Executive Law (all references hereafter are to the Executive Law) defines "disability" to mean a physical, mental or medical impairment and is, by the express language of the statute "limited to physical, mental or medical conditions which are *unrelated* to the ability to engage in the activities involved in the job or occupation" (emphasis supplied). Thus, the central issue which presents itself is whether or not the conclusion that complainant's disability was unrelated to her ability to engage in the duties of a licensed practical nurse was supported by substantial evidence.

The Court of Appeals, with Mr. Chief Judge Cooke writing for the court, has recently addressed itself to the subject of substantial evidence and to the scope of judicial review of determinations by administrative agencies and has enunciated certain guidelines *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 179-182). In addition, the court cautioned that in reviewing the record in human rights cases to ascertain the existence of substantial evidence or lack thereof (p 183) "three underlying principles should be borne in mind: the statute is to be 'construed liberally for the accomplishment of the purposes thereof' (Executive Law, § 300); wide powers have been vested in the commissioner in order that he effectively eliminate specified unlawful discriminatory practices [citations omitted]; and discrimination is rarely so obvious or its practice so overt that

recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means."

█ Review of this record while fortified by and mindful of these concepts and principles leads us to the unequivocal conclusion that the order should be affirmed.

The medical evidence reveals that, though the complainant's blood pressure was elevated beyond normal limits on September 17, 1974, this condition responded swiftly to medication and was within acceptable limits and apparently stable by October 21, 1974. Petitioner's examining physician was so advised by complainant's physician, but complainant was nonetheless rejected without examination or arrangements for a future examination by the petitioner's doctor on October 28, 1974. There is no evidence in this record that complainant could not properly perform all of the activities of the job she was seeking, and all of the medical evidence is to the effect that high blood pressure, by itself, would not interfere with her performance or likely result in harm to one under her care. Furthermore, unlike the prevailing circumstances in *Matter of Westinghouse Elec. Corp. v State Div. of Human Rights* (63 AD2d 170), there is no evidence that complainant's high blood pressure will inevitably interfere with her job. Common knowledge and every day experience tell us that large percentages of our fellow citizens are afflicted in varying degrees with hypertension, sugar diabetes and heart ailments, but in most cases these conditions respond to treatment and medication so that these people can and do function normally in almost every field of endeavor with no fear of injury to themselves or to others. If this complainant had refused to seek and follow medical direction, her disability would, in our view, be related to and, if left unchecked and unattended, inevitably interfere with her ability to perform the activities of her job. However, while complainant still has a disability, through treatment the disability, according to the record, has become unrelated. We do not agree with petitioner's contention that once one is found to have a related disability there can be no later finding that the disability is unrelated and we hasten to note that *Matter of State Div. of Human Rights v Averill Park Cent. School Dist. (supra),* relied upon by petitioner, does not support that proposition. Finally, we would note that no attempt to re-examine the complainant was ever made and when she returned for the blood pressure check on December 21, 1974 she did so at the invitation of the Che-

mung County Human Relations Commission. On that occasion, her pressure was within acceptable limits once more and she was finally hired. If we were to accept petitioner's interpretation, the vast number of our citizens who suffer from various physical ills which can be and are for the most part successfully controlled by treatment and medication could be denied employment without recourse. This was the precise state of affairs sought to be eliminated by the Human Rights Law. Under all of these circumstances, there is plainly substantial evidence to support the challenged determination, and it should be confirmed.

■ As to petitioner's contention that the division has lost jurisdiction due to the administrative delay, we must conclude otherwise. Admittedly, some of the delay is unexplained and clearly the time limitations in effect during these proceedings were exceeded. While such delay is not to be condoned, no prejudice to the hospital is demonstrated and, therefore, the division should not be deprived of jurisdiction (see *Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.,* 35 NY2d 371). This conclusion is clearly in tune with the action of the Legislature of the State of New York, which, during its 1977 session, vastly and materially liberalized the unrealistic time limits which were in effect when this proceeding was commenced.

We have examined the petitioner's other contentions and find them to be without merit.

The determination should be confirmed, and the petition dismissed, with costs.

GREENBLOTT, J. P., SWEENEY, STALEY, JR., and HERLIHY, JJ., concur.

Determination confirmed, and petition dismissed, with costs.